UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BANYAN INVESTORS, L.P. | § § § | |
| v. | § § § | CIVIL ACTION NO. H-09-614 |
| LASERSHIELD SYSTEMS, INC., and CHICAGO INVESTMENT GROUP, LLC | § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Banyan Investors, L.P. ("Banyan") files this First Amended Complaint against LaserShield Systems, Inc. and Chicago Investment Group, LLC (collectively "Defendants") and, in support thereof, respectfully shows the Court the following:

### I.      Parties

1.      Banyan is a limited partnership organized under the laws of the State of Texas.

2.      Defendant LaserShield Systems, Inc. ("LaserShield"), a Nevada corporation with its headquarters at 277 E. Amador Avenue, Suite 304, Las Cruces, New Mexico 88001-3676, conducts business in the State of Texas. LaserShield has been properly served with process in this lawsuit.

3.      Defendant Chicago Investment Group LLC ("CIG"), a limited liability company with its principal place of business at 190 S. LaSalle Street, Suite 850, Chicago, Illinois 60603, conducts business in the State of Texas. CIG has been properly served with process in this lawsuit.

### II.      Jurisdiction and Venue

4.      This Court has jurisdiction over the parties and causes of action. This is a civil action involving parties with diverse citizenship in accordance with 28 U.S.C. § 1332.

HOU:0012688/13001:1375271v2

5.      Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332.  As set forth, above, Banyan is a citizen of Texas.  As set forth, above, Defendant CIG is a citizen of Illinois. As set forth, above, Defendant LaserShield is a citizen of New Mexico and Nevada.

6.      In accordance with 28 U.S.C. § 1332(a), the amount in controversy exceeds $75,000.00.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to Banyan's claims occurred in this judicial district.

### III.      Conditions Precedent

8.      All conditions precedent have been performed or have occurred.

### IV.      Factual Background

9.      Banyan has an ongoing and long term business relationship with CIG.  Pursuant to their relationship and consistent with their prior business dealings, as well as the express representations of CIG, CIG acts as a fiduciary for Banyan with respect to investment opportunities that it presents to Banyan.  Throughout their relationship, CIG represented to Banyan that it would only present the best available deals to Banyan and, when CIG presented LaserShield to Banyan, it claimed Banyan was one of the best deals and that LaserShield was a portfolio company.  Although Banyan retains the authority to request further information from CIG and/or decline CIG's recommendations, Banyan has no duty to perform any independent research or other due diligence with respect to CIG's recommendations.  CIG is obligated to perform all initial and ongoing due diligence for their proposed investment opportunities, disclose any and all relevant information as it is discovered and, as a fiduciary, CIG must place Banyan's interests ahead of its own with respect to such investments.  Banyan reasonably and justifiably relies on CIG's knowledge, research, recommendations, and disclosures on an ongoing basis with respect to all of the investments CIG proposes, as well as CIG's commitment to act as Banyan's fiduciary.

10.      One such investment that CIG proposed to Banyan was LaserShield.  LaserShield is in the business of developing, manufacturing, marketing, and servicing, on a national basis, home

2

and business wireless security products, which require no professional installation.  As a very young company, LaserShield needed capital to fund its operations and to grow its business. CIG was engaged by LaserShield to help secure the needed financing.

11.     CIG introduced Banyan to LaserShield in late 2005 by participating in a Series D Stock offering in the company.  In 2005 and 2006, with CIG's guidance, Banyan invested over $730,000 in LaserShield.  In late December 2006, CIG again approached Banyan to invest even more money in LaserShield, this time by participating in a Series E Stock offering.   LaserShield and CIG laid out a strategic two year plan for growth and continuing market penetration, which they acknowledged relied upon a robust advertising and publicity campaign.  Much capital was needed ($18 million was to be raised through the Series E Stock offering) but CIG represented that it would be able to raise the new capital necessary to accomplish the company's goals within a six month time period.  CIG also represented that Banyan would need to act quickly in order to take advantage of the opportunity, because CIG had already engaged investors with sufficient capital to fulfill the Series E offering.  In fact, CIG is still representing to Banyan that it had never failed to raise sufficient funds at any time in the company's history.

12.     In making the pitch that continuing to invest in LaserShield was a prudent course of action, CIG updated Banyan on what CIG said were LaserShield's very positive in-store sell-through and the favorable impact on the company's margins that were expected to be realized as a result of a new contract that had been recently negotiated with a large manufacturer in China.  As CIG explained, LaserShield's sales launch had been successful in many ways as indicated by the fact that the retailers like it, stores can activate and subscribers do activate, retention is good, sales continue to increase, advertising drives awareness of and demand for new products, and both product and service infrastructures are working well.  LaserShield and CIG also touted the very significant and valuable technology the company owned by virtue of the various utility and design patents it had been granted.

HOU:0012688/13001:1375271v2

13.     LaserShield and CIG sought a significant investment from Banyan and in turn expressly promised to Banyan that they would exercise good faith and integrity in handling the company's business, would have fiduciary responsibilities to Banyan, and would be held accountable as such.  Of course, pursuant to its long term relationship and history of prior business dealings, CIG already had a fiduciary relationship with Banyan.  Based upon the representations made by LaserShield and CIG, Banyan purchased over two million dollars in Series E Stock in 2007, paying $2.25 for each share of LaserShield stock it received.

14.     The representations that LaserShield and CIG made were false.  Included in the representations made by LaserShield and CIG in their attempt to induce Banyan to invest in LaserShield were additional specific financial and operational representations that were false.  Specifically, and as one example, in the initial Series E offering memorandum, LaserShield and CIG represented to Banyan that the projected monthly recurring revenue for LaserShield was in excess of one million dollars.  That number was subsequently revised on August 2, 2007 to just over $800,000.00.  LaserShield and CIG represented to Banyan that the approximately $800,000.00 figure was based on actual—rather than estimated or projected—revenues for the first five to six months of 2007.  LaserShield's actual annual revenue for 2007 was just over two million dollars (or roughly $175,000.00 a month).  As a result, even the revised $800,000.00 per month actual revenue figure was dramatically overstated.  Both the Series E offering and LaserShield's financial statements are rife with additional examples of LaserShield and CIG's misrepresentations related to both the historical and future financial performance of LaserShield.

15.     In addition to misrepresenting LaserShield's revenue and financial performance, LaserShield and CIG also misrepresented the value of the company and its assets.  Specifically, throughout their communications with Banyan both in inducing Banyan to invest in LaserShield and in soliciting Banyan for additional funds, LaserShield and CIG actively touted the value of LaserShield's technology and intellectual property as one of the company's primary assets.  In

4

spite of that fact, after LaserShield acquired the fledgling company NextAlarm for approximately $10 million—a move that was not disclosed to Banyan until after Banyan's funding of the E Series round—LaserShield and CIG admitted to Banyan that 90% of the value of LaserShield is a result of the acquisition of NextAlarm's technology. Therefore, the value of LaserShield's technology was overstated as of Banyan's funding of the E Series round, which was complete prior to the acquisition of NextAlarm. Had Banyan known that LaserShield did not own the technology that both LaserShield and CIG represented was the primary basis for LaserShield's value as a company, or that—according to LaserShield's leadership—LaserShield was virtually worthless prior to its acquisition of NextAlarm, Banyan never would have invested. Of course, it was LaserShield and CIG's obligation to disclose this information to Banyan. Instead of doing so, LaserShield and CIG both expressly misrepresented and omitted the disclosure of material facts related to and materially impacting LaserShield's assets, capabilities, and prospects for success.

16.     Additionally, CIG and LaserShield had represented that capital raised in the Series E financing was to be used for the growth of the company; instead it was diverted to covering the company's losses. Shortly after receiving Banyan's money, critical advertising necessary for the company to operate, grow, and meet its market penetration goals, was cancelled. When radio advertising was cancelled for just one month, LaserShield experienced an immediate 68% drop in sales. Instead of growing and expanding its operations, LaserShield cut them to a bare minimum. The company's plans and forecasts, which were prepared with CIG's assistance, never came to fruition because CIG failed to do what it had promised it could and would do, namely raise $18 million dollars in a six month time period. In fact, in the two years since the Series E round was first offered, only half the amount needed has been raised.

17.     Although CIG wasn't raising the capital as it had promised to do, CIG represented to investors that the entire Series E round had been oversubscribed and that they just needed time to select the most strategic investors—in fact, Series E was never fully subscribed. In the

HOU:0012688/13001:1375271v2

interim, while supposedly mulling over investors they had brought to the table, CIG had LaserShield enter into debt financing through a number of bridge loans. In reality, virtually none of the large alleged subscribers were actually committed. Thus CIG instructed LaserShield to use equity that had been raised, from investors like Banyan, to pay down the bridge notes rather than using that equity for operating and expanding the business.

18.    While LaserShield failed to move forward as promised, thus injuring investors like Banyan, CIG benefited handsomely. LaserShield's fee agreement with CIG called for LaserShield to pay CIG a 10% cash commission plus a 10% commission in the form of warrants to purchase LaserShield stock at 110% of the offering price. CIG later demanded that LaserShield issue it the 10% share commission in the form of stock issuance at a $0 dollar share price instead of purchasing warrants as originally agreed. CIG has been paid over $3 million dollars in cash, over $2.8 million dollars in stock, and over $2.2 million dollars in additional stock in a side consulting agreement paid to an entity called Puma Strategies, LLC, which is 100% owned by a principal of CIG. Not content with the already high fees it has extracted, CIG has also demanded that LaserShield agree to have one million additional shares of stock, valued at $2.2 million dollars, issued to CIG principals through a limited liability company formed on the side. Through these actions, LaserShield acknowledges, that over 60% of the voting shares are now held by CIG or CIG friendly parties.

19.    As an example of CIG's continued conflicts of interest, CIG proposed that LaserShield pay CIG a commission on both hardware and software sold by LaserShield. By proposing to charge additional sales commissions on top of its fees, CIG dramatically increased its potential fees on the LaserShield deal at the expense of the already struggling company. Obviously, by staking its claim to as much of the limited capital available to LaserShield as possible, CIG placed its own interests ahead of both Banyan and LaserShield's. Not surprisingly, CIG did not disclose these additional commissions to Banyan.

HOU:0012688/13001:1375271v2

20.     By controlling the business, even as it drains every possible resource from it, CIG continues to set a course of action that favors CIG and affiliated parties and generates large fees and commissions at the expense of unaffiliated investors.   The actions taken by CIG support LaserShield's contention that CIG is on a campaign to control the business.  CIG's latest attempt to raise capital cements the accuracy of that statement.  CIG prepared another stock offering (Series F Preferred Stock), this time offering stock in the company for $.10 a share in contrast to the $2.25 per share that Banyan and other investors had paid in the previous round.   CIG did not provide any updated financial information to any investor in connection with the Series F offering, simply, because it did not have to.  As a result of CIG's actions, CIG insiders are able to control LaserShield at the expense of Banyan and other investors.  Consequently, with Series F, CIG abandoned the charade of false and misleading disclosures and instead told investors nothing.

21.     The Series F offering hurts Banyan as it severely dilutes its interests.  CIG, once again, stands to gain because it will again receive large fees.  In addition, an individual touted by CIG to be one of its largest investors and limited partners, as well as LaserShield's CEO, will benefit from the Series F offering because both will obtain a larger equity position at the same time they are in line to receive cash repayment of debt funded by this financing.  Moreover, LaserShield and CIG have already stated that even with the Series F financing, it is likely that LaserShield will need additional financing in the very near term.  With the additional financing, it is likely that the value of Banyan's investment will be further diluted because the terms of that financing can be dictated by CIG and related parties, including CIG's limited partner and largest investor, because of the control that they assume through this Series F financing.

22.     It was in connection with the Series F financing that Banyan was informed, for the first time, that if LaserShield is unable to complete this round of financing that it will likely be forced to file bankruptcy.  Neither CIG nor LaserShield had apprised Banyan that the financial viability of the company was precarious; indeed, last year's shareholder's meeting was cancelled and

7

despite requests from Banyan to reschedule such a meeting, no such meeting was held. Additionally, audited financial statements were requested on numerous occasions but were never provided. Instead, business updates provided by LaserShield and CIG were positive.

23.     In fact, CIG represented that a Chicago investor had offered to buy LaserShield for $40 million dollars, but the offer was turned down on the advise of CIG because it was too low in relation to the value of the company. In light of the fact that LaserShield has an independent appraisal of its subsidiary, NextAlarm, which shows that the value of NextAlarm alone is over $21 million dollars, the decision to decline an offer to purchase LaserShield for $40 million dollars appeared reasonable. However, the decision to sell stock in LaserShield for $.10 per share makes no sense when the value per share is approximately $.66 per share if only the value of NextAlarm is considered.  And of course, LaserShield's value is much higher than that today because, as LaserShield and CIG represented in previous stock offerings, the technology and  patents alone that LaserShield owns are very valuable. Of course, now Banyan knows that a majority of that value is the result of LaserShield's acquisition of NextAlarm.

24.     LaserShield has valued the company at $70 million, which equates to a stock value of well over $2.00 per share.  LaserShield and CIG must act in the best interests of all the shareholders, but they have failed to exercise ordinary care and diligence in performance of their duties.  Rather than explore alternatives such as an outside sale of the company, the sale of LaserShield's valuable technology and other patents and proprietary information, or alternative financing, CIG and LaserShield appear focused on protecting and advancing their interests and the interests of certain shareholders to the detriment of shareholders like Banyan.

### V.     Causes of Action

### Fraud and Fraudulent Inducement

25.     The preceding paragraphs are incorporated as if fully set forth herein.

26.     By overstating LaserShield's business prospects, business plans, and financial health, and CIG's ability to raise capital, LaserShield and CIG misrepresented material facts to Banyan.

HOU:0012688/13001:1375271v2

CIG represented that the big box strategy LaserShield was pursing was already successful and that that course of action was the appropriate strategy for the company. Those representations were false. CIG overstated LaserShield's success and/or failed to disclose that costs were outstripping any upside potential. CIG and LaserShield misrepresented LaserShield's value and the value of LaserShield's assets, namely, the technology owned by LaserShield prior to its acquisition of NextAlarm. CIG and LaserShield have also misrepresented and failed to disclose LaserShield's true financial performance. Within months of CIG and LaserShield making strong statements about the company's health and growth possibilities and within months of Banyan investing over $2 million dollars, LaserShield and CIG abandoned their plans which resulted in an immediate loss of a significant portion of the business. LaserShield and CIG also failed to disclose material information regarding CIG's interests in LaserShield, CIG's conflicts of interest with respect to LaserShield, and CIG's improper self-dealing. Further, by failing to disclose the fact that sufficient capital could not be raised to carry out the business strategy necessary to grow LaserShield and keep it financially viable, LaserShield and CIG concealed material facts from Banyan that they had a duty to disclose.

27.     LaserShield and CIG knew that Banyan was unaware of the facts and did not have an equal opportunity to discover the facts. Alternatively, LaserShield and CIG made these representations with reckless disregard for the truth.

28.     LaserShield and CIG were deliberately silent when they had a duty to speak.

29.     By failing to disclose material facts and by misrepresenting material facts, LaserShield and CIG intended to induce Banyan to continue to invest in LaserShield. Moreover, LaserShield and CIG failed to disclose conflicts of interest.

30.     Banyan relied on Defendants' representations, which were false, and on Defendants' non-disclosure of material facts.

31.     As a result of acting without the knowledge of the undisclosed facts and on false representations, Banyan has suffered damages.

9

## Statutory Fraud

32.    The preceding paragraphs are incorporated as if fully set forth herein.

33.    Defendants' conduct constitutes fraud in a stock transaction under Section 27.01 of the Texas Business and Commerce Code. As stated previously, LaserShield and CIG made false representations regarding LaserShield's value and assets, business prospects, business plans, and current financial health, as well as CIG's multiple roles in the company, and CIG's ability to raise capital. To induce Banyan to invest significantly more funds in LaserShield, CIG overstated LaserShield's financial performance and value, the value of LaserShield's assets, and the success that LaserShield was experiencing with the big box retailers. Although CIG and LaserShield made strong statements about the company's financial health and growth possibilities as well as their plans for accomplishing those goals, within months of making those representations, LaserShield and CIG abandoned their plans which resulted in an immediate and precipitous drop in sales. The representations of LaserShield's business prospects, business plans, and financial viability were material and they were false. LaserShield and CIG made the false representations for the purpose of inducing Banyan to invest in LaserShield.

34.    Banyan relied upon the representations made and as a result invested over $2 million dollars in LaserShield.

35.    Pursuant to §27.01(b) and (e), LaserShield and CIG are liable to Banyan for its actual damages, as well as for the reasonable and necessary attorneys' fees which Banyan has and will continue to incur, expert witness fees, costs for copies of depositions and costs of court.

36.    Without doubt, LaserShield and CIG knew that the information that it provided Banyan related to LaserShield's financial health, business plans, future growth, and financing capabilities was false; thus, LaserShield and CIG are also liable to Banyan for exemplary damages.

## Negligent Misrepresentation

37.    The preceding paragraphs are incorporated as if fully set forth herein.

HOU:0012688/13001:1375271v2

38.     As stated in detail, above, LaserShield and CIG made representations to Banyan regarding, among other things, LaserShield's value and assets, business prospects, business plans, and current financial health, as well as CIG's multiple roles in the company, and CIG's ability to raise capital.

39.     LaserShield and CIG had an interest in convincing Banyan to invest in LaserShield and made such representations for Banyan's guidance.

40.     LaserShield and CIG did not exercise reasonable care or competence in obtaining the information represented to Banyan and/or communicating such information to Banyan.

41.     Banyan justifiably relied on LaserShield and CIG's representations, which proximately caused Banyan damages.

## Violation of the Texas Securities Act

42.     The preceding paragraphs are incorporated as if fully set forth herein.

43.     LaserShield and CIG's misrepresentations and omissions regarding, among other things, LaserShield's value and assets, business prospects, business plans, and current financial health, as well as CIG's multiple roles in the company, and CIG's ability to raise capital constitute a breach of the Texas Securities Act.

44.     LaserShield and CIG's misrepresentations and omissions were material and were made as part of an offer or sale of a security.

45.     Banyan suffered damages as the result of LaserShield and CIG misrepresentations and omissions.

## Breaches of Fiduciary Duties

46.     The preceding paragraphs are incorporated as if fully set forth herein.

47.     In the Series E Offering Memorandum prepared by CIG on LaserShield's behalf, Banyan was specifically told that as a shareholder, LaserShield's officers and directors owed Banyan fiduciary duties and that actions taken on behalf of the company would be carried out in good faith and with integrity.  That was not done.  Instead, after Banyan invested over $2 million

HOU:0012688/13001:1375271v2

dollars, LaserShield pursued a course of action to benefit itself and certain shareholders to the detriment of Banyan. CIG induced LaserShield to breach its duties to Banyan. CIG actively participated, aided and abetted, and/or conspired in LaserShield's breach of its fiduciary duties.

48.    Additionally, CIG has an independent fiduciary relationship with Banyan. Based on their prior business dealings, as well as CIG's express representations, CIG is Banyan's fiduciary and owes Banyan all the duties associated with CIG's fiduciary status.

49.    Although Banyan is owed the duties of loyalty, good faith and fair dealing, full disclosure, and due care, LaserShield and CIG violated those duties. Defendants breached their fiduciary duties by failing to disclose all material facts and by misrepresenting facts in order to induce Banyan to invest in LaserShield. Additionally, the Series F financing pursued by LaserShield and CIG, which fails to disclose LaserShield's updated financial and performance data and dilutes Banyan's interest in the company, is a breach of the fiduciary duties owed to Banyan. LaserShield and CIG have used and continue to use their knowledge and status for their own personal benefit and the benefit of certain other shareholders and to the detriment of Banyan. As a direct and proximate result of the breaches of the duties owed to Banyan, Banyan has been damaged, for which amounts it seeks to recover.

### Breaches of Fiduciary Duties to Banyan vis-à-vis LaserShield

50.    The preceding paragraphs are incorporated as if fully set forth herein.

51.    Any demand by Banyan to the LaserShield Board to institute this action is excused because such demand would be a futile and useless act; as such, Banyan brings this cause of action derivatively on behalf of LaserShield. Instead of taking actions to maximize and/or protect existing shareholder value, LaserShield's Board has acquiesced to a course of action undertaken by CIG which favors certain shareholders, including ones with ties to CIG, over others. In fact, without Board consideration or approval, CIG prepared and disseminated the information related to the Series F Stock offering. LaserShield's CEO is on the Board and the Series F financing enhances his position. Another CIG principal is on LaserShield's Board.

HOU:0012688/13001:1375271v2

Moreover, CIG's large client and limited partner, who will obtain a larger equity position at the same time he is in line to receive cash repayment of debt funded by the Series F financing, is a special advisor to the Board.  As such, LaserShield's Board and senior management are not disinterested or independent.  As a direct and proximate result of the breach of fiduciary duty owed by CIG, LaserShield has suffered damages.  Banyan, on behalf of LaserShield, is entitled to recover all available damages.

<strong>Civil Conspiracy</strong>

52.     The preceding paragraphs are incorporated as if fully set forth herein.

53.     LaserShield and CIG had a meeting of the minds and combined to violate the Texas Securities Act, and to commit fraud, statutory fraud, negligent misrepresentation against Banyan.

54.     Both LaserShield and CIG committed unlawful, overt acts in furtherance of the conspiracy.  For example, both LaserShield and CIG breached their fiduciary duties in order to defraud Banyan.

55.     Banyan suffered damages as a proximate result of LaserShield and CIG's wrongful acts.

<strong>VI.     Demand for Jury</strong>

56.     Banyan has properly demanded a jury.

<strong>VII.     Prayer for Relief</strong>

WHEREFORE, Plaintiff Banyan Investors, L.P. prays for the following relief:

1.     All actual damages awarded by the trier of facts;

2.     All exemplary damages awarded by the trier of facts;

3.     Pre- and post-judgment interest at the maximum rate allowable by law;

4.     All costs of court;

5.     Such other costs as well as reasonable and necessary attorneys' fees, expert witness fees and costs for copies of depositions; and

6.     All other and further relief to which Banyan may be entitled, in law or in equity.

13

Respectfully submitted,

_____ /s/ Janet E. Militello _____
JANET E. MILITELLO
Texas Bar No. 14051200
Southern District No. 2681
600 Travis Street, Suite 3400
Houston, Texas 77002
(713) 226-1200 (telephone)
(713) 223- 3717 (facsimile)

ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:
**Locke Lord Bissell & Liddell LLP**
Brandon Renken
Texas Bar No. 24056197
Southern District No. 713645
600 Travis Street, Suite 3400
Houston, Texas 77002
(713) 226-1131 (telephone)
(713) 229-2652 (facsimile)

14

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served on opposing counsel via certified mail/return receipt requested and electronic service on this 10TH day of March, 2009, as follows:

Matthew B. Henneman
Watt Beckworth Thompson & Henneman, L.L.P.
1800 Pennzoil Place, South Tower
711 Louisiana Street
Houston, TX 77002
(713) 650-8100 (telephone)
(713) 650-8141 (facsimile)

_____/s/ Janet E. Militello_____
Janet E. Militello

HOU:0012688/13001:1375271v2